FILED

2022 Mar-03  PM 12:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**CHANDA ALANE HARDIN,**
    Plaintiff,

**v.**

**KILOLO KIJIKAZI,**
**Acting Commissioner**
**of the Social Security**
**Administration,**
    Defendant.

**Case No. 4:20-cv-879-CLM**

## <u>MEMORANDUM OPINION</u>

Chanda Alane Hardin seeks disability, disability insurance benefits, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Hardin's application in an opinion written by an Administrative Law Judge ("ALJ"). The SSA Appeals Council then denied Hardin's request for review.

Hardin argues: (1) that the Appeals Council wrongly denied her request for review, and (2) that the ALJ erred in relying on a vocational expert's testimony to deny benefits.

As detailed below, neither the Appeals Council nor the ALJ reversibly erred. So the court will **AFFIRM** the SSA's denial of benefits.

## I.   STATEMENT OF THE CASE

### A.   Hardin's Disability, as told to the ALJ

Hardin was 46 at the time of her alleged disability onset date. (R. 451). Hardin has completed two years of college. (R. 446). And Hardin has past work as a machine operator, material handler, window assembler, master control operator, and inspector. (R. 64).

In her disability report, Hardin alleged that she cannot work because she suffers from a herniated disc, sciatica, depression, and anxiety. (R. 445). At the ALJ hearing, Hardin testified that her last job was at FedEx and that she stopped working because her back problems made it hard for her to lift some of the packages. (R. 54). Hardin then said that her back problems prevented her from standing, walking, or sitting for long periods of time. (R. 57–58). For example, Hardin stated that she can only stand for 30 minutes at a time and only walk for 15 minutes at a time. (R. 57). According to Hardin, she can also only comfortably lift and carry 10 pounds at a time. (R. 58).

Aside from her back, Hardin's left knee, left hip, and feet cause her pain. (R. 58–59). And Hardin says she also suffers from depression, anxiety, and insomnia. (R. 59).

Hardin lives with her 25-year-old daughter. (R. 54). Hardin spends a lot of time in bed and no longer attends church because she cannot sit down long enough. (R. 61). Hardin also says that her impairments prevent her from washing the dishes or cooking. (*Id.*). The most Hardin says she can make is a sandwich. (*Id.*).

### B.   Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C.    Hardin's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Hardin applied for disability insurance benefits, a period of disability, and SSI in January 2018, claiming that she was unable to work because of various ailments, including herniated disc, sciatica, depression, and anxiety. After receiving an initial denial in April 2018, Hardin requested a hearing, which the ALJ conducted in April 2019. The ALJ ultimately issued an opinion denying Hardin's claims in May 2019.

At Step 1, the ALJ determined that Hardin was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined that Hardin suffered from the following severe impairments: lumbar degenerative disc disease, degenerative joint disease of her left knee, and adjustment disorder mixed with anxiety and a depressed mood.

At Step 3, the ALJ found that none of Hardin's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Hardin's residual functional capacity.

The ALJ determined that Hardin had the residual functional capacity to perform sedentary work with these added limitations:

- Hardin can occasionally climb ramps and stairs.

- Hardin can never climb ladders ropes or scaffolds.

- Hardin can never push/pull with her left lower extremity.

- Hardin can occasionally balance, stoop, kneel, crouch and crawl.

- Hardin can frequently handle and finger with her left upper extremity.

- Hardin should avoid all exposure to hazards such as unprotected heights and dangerous machinery.

- Hardin can understand, remember, and carry out simple instructions.

- Hardin can frequently interact with supervisors and coworkers.

- Hardin can occasionally interact with the general public.

- Hardin can tolerate infrequent, well-explained changes in the workplace.

At Step 4, the ALJ found that Hardin couldn't perform her past relevant work.

At Step 5, the ALJ determined that Hardin could perform jobs, such as final assembler, table worker, and eyeglass assembler, that exist in significant numbers in the national economy and thus Hardin was not disabled under the Social Security Act.

## D.    The Appeals Council's Decision

Hardin requested an Appeals Council review of the ALJ's decision. As part of her request for review, Hardin submitted a June 2017 MRI, which showed right-sided disc extrusion/herniation at L5-S1. (R. 201). The Appeals Council denied Hardin's request for review and did not exhibit this evidence, finding there was no "reasonable probability that it would change the outcome" of the ALJ's decision. (R. 2).

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   LEGAL ANALYSIS

Hardin makes two main arguments for why the SSA erred in denying her request for benefits. First, Hardin argues that the Appeals Council erred when it determined that there wasn't a reasonable probability that the June 2017 MRI would change the ALJ's decision. Second, Hardin asserts that the ALJ erred in relying on the vocational expert's answer to his hypothetical question to deny benefits.

In the conclusion of Hardin's initial brief, she also states that the "ALJ improperly applied [the] pain standard." (Doc. 14 at 53). But Hardin doesn't elaborate on this argument. So the court needn't consider it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–82 (11th Cir. 2014). The court will address Hardin's other two arguments in turn.

### A.    New Evidence to the Appeals Council

Hardin first argues that the Appeals Council erred in denying her request for review because there's a reasonable probability that the MRI from Results Physiotherapy would have changed the outcome of the ALJ's decision.[1] The Appeals Council will review an ALJ's decision if it "receives additional evidence that is new, material, relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 CFR § 404.970(a)(5).

1. <u>Background</u>: At the ALJ hearing, Hardin testified that she suffers from back problems, which prevent her from working. (R. 57). And at Step 2 of the 5-step process, the ALJ found that Hardin suffered from the severe impairment of lumbar degenerative disc disease. (R. 33). But when assessing Hardin's residual functional capacity, the ALJ determined that Hardin's "allegation that she is **_unable to work_** because of a herniated disc and sciatica is unsupported by the objective clinical findings." (R. 37 (emphasis added)). In other words, though the ALJ found that Hardin suffered from back pain and had the severe impairment of lumbar degenerative disc disease, he determined that the evidence didn't support Hardin's allegations about the severity of her symptoms.

In making this determination, the ALJ considered several pieces of evidence. First, the ALJ noted that Seven Springs Orthopedics treated Hardin for back pain in June 2016. (R. 37, 535–41). On June 17, an MRI of Hardin's lumbar spine showed L5-S1 disc extrusion with mass effect on the right S1 nerve root. (R. 540). It also showed that Hardin had mild spinal stenosis and milder degenerative changes at L3-4 and L4-5. (*Id.*). During a follow-up exam three days later, Hardin's mood was euthymic, her stance was erect with heel to toe gait, and there was no clubbing or cyanosis of her extremities. (R. 539). Inspection of Hardin's lumbar spine showed no asymmetry or pain with palpitation. (*Id.*). Though Hardin did

---

[1] Hardin doesn't challenge the Appeals Council's evaluation of any of the other new evidence she submitted to it. So Hardin has abandoned any challenge to the Appeals Council's handling of that evidence. *See Sapuppo.*, 739 at 680–82.

have a positive straight leg raise on her right side. (*Id.*). Three months later, Dr. James Weisman examined Hardin. (R. 37, 619–20). Dr. Weisman observed that Hardin had decreased range of motion and a paravertebral spasm. (R. 37, 620). But he also found that Hardin walked on her heels and toes without difficulty, had a normal motor exam, and didn't suffer from atrophy. (*Id.*). Plus, Hardin's straight leg raising was only slightly diminished on the right at 85 degrees and negative on the left at 90 degrees. (*Id.*).

The ALJ also considered Hardin's three emergency room trips for back pain. (R. 37, 673–710). As the ALJ noted, Hardin reported to the emergency room for back pain in April 2018. (R. 673). On examination, Hardin had painful range of motion and decreased straight leg raises. (R. 677). But Hardin had only mild pain in the lumbar area and a steady gait. (*Id.*). Hardin returned to the emergency room with back pain in November 2018. (R. 693). Again, on examination, Hardin had only mild back pain. (R. 700). And Hardin's emergency room examination found that Hardin had full, normal range of motion in her extremities, that Hardin had normal range of motion in her back, and that Hardin was in no acute distress. (R. 699–700). Hardin again went to the emergency room for back pain in January 2019. (R. 704–09). On examination, Hardin had moderate back pain. (R. 708). But Hardin had normal range of motion, no costovertebral angle tenderness, no muscle spasms, and negative sitting straight leg raises. (*Id.*).

Hardin received treatment for her lower back pain from the Pain & Rehabilitation/Doley Clinic. (R. 624–33). As the ALJ noted, treatment notes from the clinic state that Hardin had an MRI of her thoracic spine which showed mild disc bulging from T5-9 without significant neural compromise. (R. 629). On examination, Hardin had decreased range of motion, but her motor examination was normal. (R. 626–28, 631–32). And Dr. Decontee prescribed Hardin Neurontin, which she said helped ease her pain. (R. 629). The ALJ also discussed how Hardin underwent physical therapy at Nixon Spine and Sport from May to July 2017. (R. 711–70). As the ALJ explained, Hardin reported suffering from severe

back pain in May 2017. (R. 768). But by July 2017, Hardin was rating the pain in her lower back and thoracic spine as a 5/10 on the pain scale. (R. 711–14).

The ALJ finally discussed Hardin's consultative examination with Dr. Ernest Mollohan. (R. 647–61). During that examination, Hardin rated her back pain as a 3 or 4/10 on the pain scale. (R. 654). And on examination, Hardin was in no apparent distress and had normal range of motion except for decreased flexion in her lumbar spine. (R. 648). Hardin also had a non-antalgic gait and didn't use any ambulatory assistive devices. (R. 654).

But the ALJ didn't consider Hardin's June 2017 MRI, which showed right-sided disc extrusion/herniation at L5-S1. (R. 201). Hardin instead submitted this evidence to the Appeals Council as "new evidence" for it to consider in the first instance. (R. 2). And the Appeals Council found that the MRI did "not show a reasonable probability that it would change the outcome of the decision." (*Id.*). So the Appeals Council didn't exhibit this evidence. Hardin says that the Appeals Council erred for two reasons.

2. Evaluation of evidence: Hardin first argues that the Appeals Council erred because it didn't adequately explain why it rejected her request for review and instead "perfunctorily adhered" to the ALJ's decision. But when the Appeals Council denies a request for review, it is "not required to give a . . . detailed explanation or to address each piece of new evidence individually." *See Hargress v. Soc. Sec. Admin. Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018).

And here, the Appeals Council's denial letter shows that it adequately evaluated Hardin's new evidence and considered her request for review. The Appeals Council stated that it had denied Hardin's request for review because it "found no reason under our rules to review the Administrate Law Judge's decision." (R. 1). The Appeals Council then explained what those rules were and why it didn't exhibit Hardin's new evidence. (R. 2). In addressing the June 2017 MRI, the Appeals Council stated that it found that "this evidence does not show a reasonable

probability that it would change the outcome of the decision." (*Id.).* That's all the explanation required. *See Hargress*, 883 F.3d at 1309 (finding explanation adequate when Appeals Council stated only that the new records were about a later time, so they didn't "affect the decision about whether [the claimant was] disabled beginning on or before February 24, 2015"). So this argument fails.

3. <u>Reasonable probability finding</u>: Hardin also challenges the merits of the Appeals Council's finding that there was no reasonable probability that the June 2017 MRI would have changed the ALJ's decision. According to Hardin, the MRI, which showed that Hardin was suffering from a herniated disc, is material because the ALJ found that Hardin's "back pain was not substantiated [by] medical evidence." (Doc. 14 at 44).

This argument mischaracterizes the ALJ's hearing decision. The ALJ did not, as Hardin suggests, find that Hardin's back pain wasn't caused by a medically determinable impairment. Instead, the ALJ found that Hardin's lumbar degenerative disc disease was a severe impairment. (R. 33). To be sure, the ALJ rejected Hardin's testimony that her back pain was disabling (*i.e.*, that it prevented Hardin from working). (R. 37). But the ALJ also recognized that Hardin's lumbar degenerative disc disease limited Hardin's work-related abilities. For example, the ALJ found that imaging of Hardin's spine and Hardin's examination findings showed that Hardin couldn't perform the lifting and carrying required to perform light work. (R. 39). So the ALJ limited Hardin to sedentary work, which allows lifting of no more than 10 pounds at a time and requires only occasional walking/standing. 20 CFR § 404.1567(a). The ALJ also accommodated Hardin's back pain by finding that Hardin can only sometimes climb ramps and stairs and that she can never climb ladders, ropes, or scaffolds. (R. 36). Finally, the ALJ limited Hardin to only sometimes balancing, stooping, kneeling, crouching, or crawling. (*Id.*).

So this case isn't like *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054 (11th Cir. 2021), which Hardin says shows that the Appeals Council erred in denying her request for review. In *Pupo*, the claimant submitted

new evidence to the Appeals Council that showed that her stress urinary incontinence was serious enough to require surgery. *See id.* at 1063. This evidence contradicted the ALJ's finding that the claimant's physical impairments had never required hospitalization. *See id.* It also undermined the ALJ's Step 2 finding that the claimant's stress urinary incontinence wasn't a severe impairment. *Id.* at 1059–60. Plus, as the Eleventh Circuit found, the ALJ hadn't adequately considered how the claimant's stress incontinence affected her ability to perform the lifting requirements of medium work. *Id.* at 1064. As a result, there was a reasonable probability that evidence of the claimant's stress incontinence surgery would have changed the outcome. *See id.*

Here, in contrast, the ALJ's residual functional capacity assessment accounted for Hardin's back impairments. And Hardin hasn't explained why the June 2017 MRI supported greater functional limitations than those the ALJ assessed. At most, the MRI establishes a diagnosis of disc extrusion/herniation. And a diagnosis alone doesn't show that Hardin suffers from any particular functional limitation. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). So the Appeals Council didn't err when it found that there's no reasonable probability that the MRI would have changed the result of the ALJ's decision.

## B.    Vocational Expert's Testimony

Hardin finally contends that the ALJ erred in relying on the vocational expert's testimony to deny benefits because the hypothetical question to the vocational expert wasn't based on a correct or full statement of her limitations and impairments. "[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). But if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in his hypothetical question to the vocational expert. *See Crawford*, 363 F.3d at 1161.

Though Hardin alleges that the ALJ erred in relying on the vocational expert's testimony, Hardin doesn't explain how or why the ALJ erred. Instead, Hardin's briefs merely block quote the vocational expert's testimony and cases in which courts found a hypothetical question deficient. Plus, Hardin's challenge seems to be to the ALJ's hypothetical question that limited Hardin to a range of light work. But the ALJ didn't rely on the vocational expert's answer to this hypothetical question to deny benefits. Instead, the ALJ relied on the vocational expert's answer to his question limiting Hardin to a range of sedentary work to find that Hardin could work. In any event, after considering the evidence, the vocational expert's testimony, and the ALJ's decision, the court discerns no error in the ALJ's hypothetical question or his reliance on the vocational expert's hearing testimony. So the court rejects this argument.

## IV. CONCLUSION

The ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision, and the Appeals Council did not err in denying Hardin's request for review. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on March 3, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE